Okay. The next case before the court is a series of cases, actually. 14-3181, 3182, and 3183, Ryan v. Department of Homeland Security. You are seeking to reserve Mr. Broida. Is that how you pronounce that? Yes, Your Honor. Two minutes? Yes. Okay. You may proceed. Thank you, Your Honor. As may it please the Court, I have the honor to represent Joan Ryan in these three consolidated appeals. The issues are moderately complex. The resolution is extremely important in civil service law. This is another case involving the intersection of the Civil Service Reform Act and national security. It involves an indefinite suspension, a rather prolonged one, several appeals to the board. The principal concern here is the board's treatment of the alternatives available to the agency when the indefinite suspension was proposed. What the board decided was that there is a constitutional due process right of the appellant, my client, Ms. Ryan, for the agency's deciding official, Ms. Tierney, who is the regional administrator of FEMA Region 3, to consider alternatives to the indefinite suspension. The alternatives were several, administrative leave, detail to unclassified duties, and particularly a demotion to a position that Ms. Ryan could have filled, which was open, funded, vacant, and under recruitment. The board held that Ms. Ryan had a constitutional right to the deciding official's consideration of those alternatives. But then the board decided that it had no authority to review the agency's exercise of discretion, which in this case was to impose an indefinite suspension. Now, the reasoning of the board is somewhat curious. They actually offered two reasons. You'd agree she wasn't entitled to be transferred, going on and on. I agree. It was a matter of discretion. It's a matter of mitigation authority. And since 1981, in the Douglas decision, the board has been exercising mitigation review in adverse actions before the board, which constitute about 45 to 50 percent of their caseload. In terms of what that mitigation should be, though, can you point to any statute, regulation, or even internal policy that said that they have to consider reassignment to a non-security clearance position? There is no statute, no regulation, and no policy of which I'm aware that requires it. But the board requires it as a matter of constitutional due process. It can't get better than that as far as I'm concerned. But what the board said here at page 23 of the appendix, we find that ordering the appellant's restoration to duty or paid administrative leave status before the agency reinstates their access to classified information would intrude upon the agency's authority to regulate and manage employees' access to classified information. But didn't the board say that what she had a right to was to have a decider with discretion to consider mitigating punishment? But isn't our case law say that whether that mitigation punishment would always include reassignment to a non-classified position depends on the existence of some statute, regulation, or policy? The case law, the answer is yes, and the answer is no. The case law comes from removal cases, non-indefinite suspension cases, with the exception of one footnote in the Biggers decision, which involved a claim for back pay. It was not an issue in the case. It was a footnote. But the case law started with Egan v. Department of Navy in 1988, and the Supreme Court there never came up with a notion, and that case involved, by the way, a review of the MSPB decision that it had authority to look behind the security clearance. That's not the issue here. But aside from that, what the Supreme Court said there— It's been a long time since I read Egan, but wasn't he suspended at the start? Oh, I'm sure he was. And then the case, however, involved a removal, and the removal was considered by the board. And then that went to the Supreme Court eventually after it came here, over a strong dissent by the then Chief Judge, and went to the court. But what the Supreme Court held was that although the board had no right to review the merits of a security clearance denial or revocation, the board certainly had the right to apply due process considerations under its organic statute, 5 U.S.C. 7513, and the feasibility of a reassignment of Mr. Egan, the unfortunate mechanic, to another job. What then happened—now remember, this is a removal case not involving indefinite suspension. Indefinite suspension is a much different penalty against an employee. But then in the decisions in Griffin and Wiles decided on the same day, this court decided that what the Supreme Court really meant was that the board need not consider a reassignment unless there's an agency regulation requirement. That's not what Egan said. That's not what the solicitor argued. But that's what this court interpreted. So to answer your question, the answer is yes. But we distinguish that— So you want us to disagree with our own case law? No. I want you to distinguish your case law, Your Honor. Wiles and Griffin were removal cases. Egan was a removal case. The only time this court has mentioned anything related to a penalty in indefinite suspension, as far as I can recall, is the footnote in the Biggers case, which didn't even involve a question of discretionary agency action. It involved an entitlement to back pay when Mr. Biggers finally got reinstated to his position, when his clearance was reinstated. Okay. So you want us to say that if you're removed, we don't have to consider an alternative reassignment to a non-classified position, but if you're indefinitely suspended, we do? The case law suggests that result. I recognize that this panel cannot overrule Griffin and Wiles. I can't ask you to do it. I have to live with that result, but I can certainly distinguish it. Indefinite suspension is a much different penalty. And when the Merit Systems Protection Board comes up with the idea that there is constitutional due process involved and a responsibility to the agency to consider alternatives, and then throws up its collective hands and says we're not going to review the agency's discretion on a matter of constitutional due process, the board is abnegating jurisdiction to review penalties that have been asserted by agencies since 1981 in the Douglas case and applied to indefinite suspension since 1982 in Martin v. Customs Service. Let me move on to another question, counsel. Is it your position that the ultimate acquittal on the criminal charges gives rise to a right or entitlement to receive a return of the security clearance? No, Your Honor, I do not. Okay. Thank you. That brings us to the second part of the case, which I would have forgotten in my excitement about the first. The second part of the case involves the duration of the indefinite suspension. Ms. Ryan was indicted. She was tried before a federal jury in Philadelphia, Eastern District of Pennsylvania. She was acquitted. The indictment essentially dissolved with the acquittal. Goodbye indictment. The agency did nothing. Ms. Ryan was then before the Merit Systems Protection Board on her original appeal. She filed another appeal saying the time is ripe to do something about this indefinite suspension. Either give some justification for it and continue it, or stop it and return her to duty. Well, the board said, we don't have jurisdiction to consider this. Your appeal is premature. What is the board's authority to review the internal timing of the assessment of a security clearance? It has no authority to review the timing of a security clearance. It has all the authority in the world to review the timing of a suspension, which is a disciplinary measure. That's what the board does. Right, but the board said the problem is that the suspension was indefinite, subject to a condition subsequent, which was return of security clearance. Isn't your real avenue of relief to extent one exists through an indainment proceeding or an APA proceeding that addresses the timing of the security clearance assessment? That would be a possibility. I'm representing a client who is your informed apocris. These people turn to the Merit Citizens Protection Board. They can't be expected to be running the district court, and then we'd have preclusion issues in district court. It's much too complex to have multiple judicial avenues for disputes that Congress said were supposed to be at the MSPB. There's no doubt that the MSPB has jurisdiction over a suspension. That's statutory. No question. How long has the security clearance been suspended at this point? Your Honor, the security clearance- I assume it still is. There's more, Your Honor. The security clearance was suspended on March 28, 2012. That continued until October 8, 2014. Ms. Ryan's removal was proposed. That was after the submission of most of the briefing in this case, although I noted it in a footnote someplace. And the removal of Ms. Ryan was December 15, 2014. So her clearance was suspended a good long time. And it's been revoked now? Oh, yes, sir. That's right. So that was my question. When was it revoked? The security clearance was revoked, subject to appeal on July 28, 2013. There was an internal appeal on the security clearance side. So to return to your question, Judge O'Malley- Am I to understand, because it's nowhere in the record as to what the additional reason was, but there was a reference that there was an additional reason for the denial of the security clearance. So was that reason separated apart from what- gave rise to the underlying criminal charges of which she was acquitted? The clearance suspension started with the indictment, without reference to the facts. It was not based on the facts. It was based on the indictment. She gets acquitted. The clearance suspension continues with the notice of revocation. The notice of revocation depended on two things. One, the facts supporting the indictment, all the facts. Secondly, some interaction between Ms. Ryan and a General Services Administration deputy ethics official, which was not included in the indictment. So there was new material. Now, under the court's cases, in the Chaney case, and in the Romero case, and, oh, yes, King v. Alston, this court has held that an employee is entitled to more than just notice that their clearance has been suspended when they have the opportunity to reply on the management side to the deciding official. They're entitled to know why was the clearance suspended. Not every fact, not every document, but certainly the basics. And under the Ward case, which this court decided, I think it was in 2011, the court has been pretty clear that due process includes notice of new information that relates to an adverse action. So it seems to me that when the government changed the basis for the clearance suspension to include factual information from the indictment plus the interchange with the GSA deputy ethics official, that it should have put my client on notice and said, look, we're changing the basis of this. It wouldn't have taken much. Come on in and talk to the deciding official and see if you can persuade that deciding official,  Are you saying that Ms. Ryan was not even afforded the opportunity to address the new matters? I mean, I thought the government's argument was that these are separate determinations. One was a suspension. The other was an ultimate denial of security clearance and a removal. And are you saying Ms. Ryan didn't have the opportunity to object to reliance on the new matters? Not before the board. Let's try that again. Not before FEMA on the management side. She had the opportunity to respond on the security clearance side. Remember, the agency separates security clearance functions from other management functions. It has to, so one doesn't influence the other. So when the agency told her her clearance was revoked, they gave her the opportunity to appeal. She appealed, but that's on the security clearance side, not on the management side. Her suspension, her indefinite suspension was on the management side. That was the removal, correct? Well, it led to the removal, eventually. Yes, but that's not before the court. That's now before the Merit Systems Protection Board, but not here. We're only concerned with the indefinite suspension. So our concern here is the board's self-imposed limitation on its ability to review the duration of an indefinite suspension. The way the board looks at it, the sun could run out of hydrogen, and one of these indefinite suspensions could continue, and they wouldn't do a thing about it. Okay. Into your rebuttal time. Thank you. We'll restore the full two minutes. We'll give the government an extra 30 seconds if they need it. May it please the Court. Mr. Ryan appears to concede at this point that if we were faced with a removal case, then Griffin and Lyles would apply, and Ms. Ryan would have no right to have the board consider alternatives to the indefinite suspension. She neglects to address this Court's precedential decision in Hess, which we cited in our brief. Hess did involve an indefinite suspension, and just as in Griffin and Lyles, and in fact the Court cited two Griffin and Lyles in Hess and said, I'm quoting, Mr. Hess claims that he should have been reassigned to a non-sensitive position rather than be suspended from employment with the agency. This Court, however, has held that an employee has a right to be transferred to a non-sensitive position only if that right is manifested in statute or regulation. There is no dispute in this case that the agency did not have a regulation providing Ms. Ryan with a right to transfer. So the Hess decision pertaining to indefinite suspensions, along with Griffin and Lyles, render the board's decision a misplaced offer. What about a policy? Did FEMA have a policy to consider these alternatives? It did not, Your Honor. There is no evidence on the record that there was such a policy. Ms. Ryan is confusing two issues when she talks about the due process right to have a deciding official with authority to consider alternatives. I believe Dr. Romali picked up on that with her question. That is different than the penalty and mitigation argument that was the gist of Ms. Ryan's argument before the board and in her brief. The due process right goes to the notice aspect and the right to make a meaningful response to a deciding official with authority to reach a different decision than was proposed. There is no dispute in this case that the deciding official did have authority to make an independent decision to either go ahead and impose the penalty that was suggested by the proposing official or not. She could have decided, for example, that it was a case of mistaken identity and that Ms. Ryan wasn't the person whose security clearance had been suspended and therefore the result should be different. Would that deciding official have had the discretion to reassign to a non-security clearance position or a non-secure position even if we concluded they didn't have the obligation to do so? She did actually testify that she did consider reassignment of Ms. Ryan, so I have to assume from that that she believed that she had that discretion. However, there were no other positions to which Ms. Ryan could be reassigned at her grade that didn't require the same security clearance. So it wasn't feasible. In her grade, does that matter? Mr. Broida's argument was, well, she could have been reassigned below her grade. Right, and the deciding official testified about that also and said that it would be a waste of government resources to have an employee be paid at a GS-15 or a GS-15 employee working at a GS-14 position. But I think it's also important to lose sight of the fact that it's not this Court or even the Board's responsibility to look at the penalties that the agency didn't select. What the Board does is review the penalty that was imposed to see whether it promotes the efficiency of the service and whether it exceeds the tolerable bound or reasonable bound. Nevertheless, just tolerate my curiosity for a minute and tell me if a GS-15 is reassigned to a GS-14 position, they're still paid GS-15? It depends how it's affected. If it's a detail, they'll be paid at their GS-15. If it's a demotion, they'll be paid at a GS-14. So the deciding official could have demoted her? If she believed that she had that discretion, theoretically she could have to a position that didn't involve security clearance. But again, as this Court has held in Hess, Griffin-Lyles, there certainly was no right or obligation for the agency to do that. And this Court has numerable times upheld the penalty of an indefinite suspension for a loss of the security clearance. So clearly it does not exceed the tolerable bound for reasonableness. The Board certainly does have the authority to determine whether or not an indefinite suspension is actually indefinite, right? Absolutely, Your Honor. In other words, if it lasts forever, the Board would have the authority to take some action, would it not? The Board certainly does have authority, I would agree, to determine whether an indefinite suspension is in fact indefinite or temporary, meaning that it's not permanent. Where an indefinite suspension is tied to a condition subsequent that will lead to the termination of that indefinite suspension, it is by definition not a permanent suspension. Regardless of whether that condition subsequent ever occurs? Well, as long as there is a condition subsequent that will theoretically occur at some point, it is not a permanent suspension. The duration, the fact that something takes a long versus a short time, doesn't render the indefinite suspension not indefinite or not temporary in nature. In this case, the record actually doesn't indicate that it took an extremely long amount of time. The agency waited until after the acquittal, then investigated as it said it would because the agency, of course, has a different standard of review than a criminal decision. Within a relatively short amount of time, they went ahead, revoked permanently Ms. Ryan's security clearance, and then based on their indication, proposed her removal and effectively did remove her. In the meantime, she took advantage of every opportunity within the agency to appeal the security clearance determinations within that adjudicatory process. Of course, she was also appealing the employment action. Even if theoretically there could be a case that really drags on for a very long amount of time, this isn't that case. But frankly, even if there was, the board would not have jurisdiction to look at that because it doesn't have jurisdiction to look at the adjudicatory process. As long as there is a condition subsequent, then the indefinite suspension is by definition indefinite. You say that the proper inquiry or the proper review is of the action imposed and that we shouldn't focus or there shouldn't be any focus on the options that weren't taken advantage of or implemented. How can you make a proper evaluation of what did happen without considering what could have happened? Well, the court Are you saying we should evaluate that in a vacuum without any reference to what the other possibilities were? No, not at all, Your Honor. And I think it's important, of course, to recognize exactly what kind of case this is because I don't want my words to at all be taken to apply to every adverse action case. This is a very unique case. I mean, this type of case is a unique case. We're talking about a case where the employee loses their eligibility to hold their position. It would be like a lawyer who lost his law license. The agency doesn't have an obligation in those cases to assign that employee to a different position. We're not talking about something where someone committed some misconduct and perhaps there are mitigating circumstances that will sort of counterbalance that. There's no amount of mitigating circumstances that will counterbalance the fact that someone has lost their eligibility to hold their position. This Court has said in the greater context of penalties that it will defer to an agency's choice of penalty unless it exceeds the tolerable bounds of reasonableness. In a non-loss of eligibility situation, yes, maybe it makes some sense to look at these sort of counterbalancing factors, but in this situation where the individual has lost their eligibility, again, there's really no amount of mitigating factors that will restore the eligibility and there's no way that this Court can order the agency to maintain someone in a position for which they have lost their eligibility, particularly a loss of a security clearance. So it is a very unique situation and I think that's what the Court was recognizing in Griffin and Lyleson. Mr. Stern, let me ask you a hypothetical. We cut a lot of slack in national security areas under Eden and its proximity, but supposing the security clearance is pulled and the investigating agency comes back and says we just can't find the evidence to go either way and so we're stuck on we revoked it or we suspended it and we're stuck on whether to revoke it or not. At some point, does the Board then have jurisdiction? No, Your Honor, no, because first of all, with respect to security clearance, the Board is actually shifted to the, not so much shifted to the employee, but no one has a right to a security clearance and so unless there is an affirmative reason to grant them a security clearance, then they don't have a security clearance. So I would actually say in that situation where maybe they're stuck, there's a balance, then the person doesn't get a security clearance and that's what Eden says, that's the law of security clearances. Also, I would like to suggest and perhaps this is, I know there's some concern that security clearance adjudications may drag on. It's really not in the interest of the agency to have it drag on either. It's clearly not in the interest of the employee. They want to have their situation resolved, but really it's not in the interest of the agency either. On the employment side, the agency has an interest in figuring out who is going to be holding a certain position. During the time that an employee is, for example, indefinitely suspended, the agency still needs that job done so they're trying to find another employee to temporarily put in that position and then that person's position is empty. So it's really not in the agency's interest on the employment side to just have this adjudicatory process go on forever. On the security side, it's also not really in the agency's interest. I mean, people that do these adjudicatory jobs take their jobs seriously. They're only interested in people having security clearances that are entitled and require security clearances. So they're also interested in resolving it. Yes, sometimes it may appear to take longer than we would like it to, certainly than the employee would like it to, but I think that fears that it will go on forever or never be resolved are probably unwarranted and I don't know that there's been any evidence of that. Attorney, I'm sorry, I ran out of time. I was going to address the notice issue, but unless the court has questions for me on that, I'll leave it to my colleagues. Okay, thank you. No, it's not your turn yet. Oh, I'm sorry. May I please, the court, just a few things to add to the board's role in these cases. Some of the problem in the petitioner's argument has to do with the confusion between the separate processes of the security clearance process and the adverse action process. For example, the agency's decision to revoke the clearance during the course of the indefinite suspension would have been a final decision that ended it if the petitioner had not appealed, but because she did, the indefinite suspension continued based on the same lack of clearance which continued, so that it would have been inappropriate to find that it had ended at that point because the condition subsequent is a final adjudication of the clearance. Similarly, the additional evidence relied on in that case because it was in the security clearance process is not subject to due process and the right to respond, although she did have a chance to respond because she appealed it to a higher level in that process. It would only be when she came to the board with an adverse action, when the adverse action started, then she would have the rights to notice. Right, so the new adverse action, though, is removal, right? Right, and in fact, she has been removed, and I assume that she had an opportunity to challenge this if she wished in that removal appeal. And there were due process rights that would attach as it relates to that removal, correct? Yes, exactly. And that appeal is where, before the board right now? It's now before the board, yes. An indefinite suspension, once there is a removal, the condition subsequent to the indefinite suspension, essentially when the indefinite suspension ends, it's over, so the condition subsequent never occurs, right? Well, the condition subsequent is the final adjudication, that permanent revocation of the clearance because that was the stated basis for the indefinite suspension was that her clearance had been suspended, which in turn was based on the indictment. Although, I would also note that the indictment, the notice that she received also notified her that the agency, once the criminal case was disposed of, that the agency would then investigate what its position was and whether to grant or deny clearance so that it was clear from the notice that the acquittal would not be the determining factor, mainly probably because the different standards of proof in a criminal case and what the agency would want to take account of in its own proceedings. So it's your position that as it relates to notice, that the notice of additional factors only related to the new adverse action and not to the indefinite suspension? The indefinite suspension continued because the new thing was considered in the revocation, which would have ended it had it not been appealed. And in that appeal, she did have the opportunity to challenge that. Do you agree that the Board would have jurisdiction over an indefinite suspension to the extent that an argument was made that the suspension wasn't really indefinite because there wasn't a condition subsequent that could meaningfully occur? In other words, if it took forever to assess the security clearance? Essentially, the temporary nature of the indefinite suspension is established by the condition subsequent. So the only thing really that could end it would be if there was evidence that the agency never intended to issue the final decision. In a situation like that, perhaps the Board could treat it as a constructive removal because there was such evidence. What if the condition subsequent is something that ultimately couldn't occur? Monkeys could fly or whatever. In other words, doesn't the Board have the ability to assess whether the condition subsequent is meaningfully attainable or at least determinable? Every indefinite suspension must have an ascertainable ending. It's not definite because you won't know when it occurs, but there has to be one. If there was something preposterous or impossible stated, of course that couldn't be accepted as an indefinite suspension. It couldn't be upheld as an indefinite suspension. So the Board can look at it to see if it's pretextual? Yes, I think in that sense that that would be the case. With respect to the Board's authority, however, to review the agency's process for having gone on too long, there's just no authority for that at all. Is there a remedy, like an APA remedy or a mandamus remedy? There might be, but there would not be at the Board. And that's because under EGAN, the Board is strictly limited to procedural matters, guaranteeing that the employees have whatever procedures the statutes or the agency's own regulations provide. But the Board cannot reach the merits of the clearance. Here, if the Board were to say, well, this has gone on a long time, we think that we're going to call the agency in and have them defend what's going on, as was suggested in the Board's Wickard case, in the dissent to the Wickard case, by one of the Board members picking up on something that the petitioner raised. Such a review would necessarily reach into agency issues like, well, what are your workloads? How many resources are you providing to decide these cases? And so on. The Board would have to second-guess many agency matters that would clearly intrude on the agency's discretion over security clearances and access to classified information. And it is a merits process that's going on. They're determining the merits of the clearance issue. So the Board could hardly take jurisdiction to decide whether they were deciding it fast enough. It would just be too intrusive under Egan. Okay. I think your time is up. Any more questions? No. Okay. Thank you. We'll give three minutes for rebuttal. Twenty-five years ago, my honorable colleague, Mr. and I, were arguing an indefinite suspension case in this court, Engdahl v. Department of Navy. Twenty-five years ago. It's still not going on. It's still going on. It's been indefinitely suspended. Mr. Engdahl was indefinitely suspended, but he was also removed. So, first of all, I don't concede anything. I don't concede that if Ms. Ryan's removal is reviewed by the Board, for example, that the Board won't apply the same constitutional due process consideration to alternatives to the removal. That still is very much an issue. The Board says it's a constitutional due process issue. It's not for me to waive that. With respect to the administrative procedure. Well, I mean, I don't think that there's an argument that she wouldn't be entitled to the same due process to the extent that there's some limited process due under Egan. I think the court's decision in Griffith and Weil present much greater difficulties on a removal case than they do here on the indefinite suspension case. What about Hess? Hess. I see your effort in the scribe brief to distinguish it, and I'm not buying it. Hess, this was about whistleblowing and whether you could use whistleblowing as an affirmative defense to an indefinite suspension. You can't do it. Hess said so. But there was very firm language about the indefinite suspension in the context of revoking of a security clearance, was there not? The result was very clear, but the issue was very limited. Can you assert an affirmative defense to the indefinite suspension that would intrude upon the agency's ability to make security clearance determinations? The answer was no. You can't assert an EEO defense. You can't assert an unfair labor practice defense. You just can't reexamine the clearance process. But we're not asking the board or the court to examine the clearance process. We're asking the board to make sense of its discretionary ability to review a disciplinary action. An indefinite suspension is not even a disciplinary action. The disciplinary action came as a result of a phrasing by this court in Thomas v. General Services Administration. An indefinite suspension is a protective measure. Who does it protect? My friends, the government. It protects the government. It's not meant to punish the employee. But at some point, there comes a balance. Who are you trying to protect, and when does this really become a punishment? Again, my client here is in full apocryphal. This is not a good situation to be without pay, without being able to be permanently employed for two years. It's horrific. You can have all sorts of appeals. You can have lawyers all over the place, but it doesn't improve your financial circumstances. Again, on a protective measure, there should be some balance that's struck. But there's no right to a security clearance. No right to a security clearance, but there is a right, Your Honor, to the board, as they said, to require the agency to review alternatives to the indefinite suspension. And, yes, it's true that a condition of your job has been removed, but there were lots of other jobs. I see I'm in. I should stop if I can complete my sentence here. There were lots of other jobs which were available at the time at FEMA Region 3, which the deciding official, Ms. Tierney, could have placed my client in that did not require a clearance. That was the essence of our case. Thank you, Your Honor. Okay. Thank you. Case will be submitted.